UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELTON SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF BAKERSFIELD, *et al.*,<br><br>    Defendants. | Case No. 1:22-cv-00494-CDB<br><br>ORDER ON MOTIONS IN LIMINE<br><br>(Docs. 59-60) |

**<u>Introduction</u>**

Plaintiff Melton Smith ("Plaintiff") asserts causes of action pursuant to 42 U.S.C. § 1983 and state law against Defendants City of Bakersfield, Bradley Vaughn, and Kolby Davenport (collectively "Defendants"), based on Defendants' alleged actions in connection with a law enforcement encounter between Plaintiff and Defendants and others on December 28, 2020, in Bakersfield, as alleged in the operative Complaint. (Doc. 2). Plaintiff asserts causes of action for: (1) Negligence – Unreasonable Use of Force; (2) Battery by a Peace Officer; (3) Intentional Infliction of Emotional Distress; (4) California Civil Code § 52.1 – Civil Rights Violations – Excessive Force; and (5) 42 U.S.C § 1983 – Excessive Force. (Doc. 51 at 7).

Trial of the action is scheduled to commence on October 7, 2024. (Doc. 51 at 2). Pending before the Court are the parties' motions *in limine*, filed September 3, 2024. (Docs. 59-60). Defendants filed their opposition to Plaintiff's motions on September 9, 2024. (Doc. 63). Plaintiff filed his opposition to Defendants' motion on September 13, 2024. (Doc. 64).

1

**Discussion**

**A. Legal Standard**

Parties may file motions *in limine* before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Rulings *in limine* are not binding on the court, and the court may amend, renew, or reconsider such rulings in response to developments at trial. *Id*. at 41–42.

To decide motions *in limine*, the Court considers whether evidence "has any tendency to make a fact more or less probable than it would be without the evidence," and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. However, the Court may exclude relevant evidence for various reasons, including if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In other words, relevant evidence may be excluded when there is a significant danger that the jury might base its decision on emotion or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enters., Inc*., 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

The rulings on the motions *in limine* made below do not preclude any party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. *See City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that the court's motion in limine ruling is a preliminary opinion). In this event, the proponent of the evidence shall raise the issue outside the presence of the jury.

**B. Uncontested Motions *in Limine***

Plaintiff does not contest Defendants' motion *in limine* as to evidence relating to two of the four findings made following an investigation by Bakersfield Police Department (BPD) in connection with the underlying use of force incident between Plaintiff and Defendants. (Doc. 64 at 1-2).

For their part, Defendants do not oppose Plaintiff's third motion *in limine* as to evidence of Plaintiff's juvenile arrests and convictions, unless Plaintiff "somehow opens the door to it." (Doc. 63 at 12).

Accordingly, these motions *in limine* are granted to the extent of the nonmovant's non-opposition.

### C.  Plaintiffs' Contested Motions *in Limine*

#### *No. 1: Pending Criminal Charges Related to a Subsequent Arrest*

Plaintiff seeks to exclude any reference, evidence, testimony or argument regarding pending criminal charges in connection with Plaintiff's arrest during an unrelated encounter with law enforcement following the incident at issue in this case. (Doc. 60 at 7). In connection with that subsequent encounter, Plaintiff faces pending criminal charges including human trafficking, pandering, oral copulation, and rape of a minor. *Id.* Plaintiff asserts the criminal charges are irrelevant to the question of whether the Defendants' use of force was reasonable (both as to his section 1983 and related state law claims) because a jury must judge reasonableness based on what was known to the officers at the time force was employed, citing *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011). (Doc. 60 at 8-9). Plaintiff additionally argues that to introduce such evidence would suggest an improper inference based on character evidence, in that the jury may infer Plaintiff gave the officers reason to use force in this action due to his alleged bad conduct at issue in the pending criminal matter. *Id.* at 9-10. Moreover, Plaintiff argues the pending criminal charges should be excluded because the probative value of the evidence is none or, in the alternative, substantially outweighed by the danger of unfair prejudice. Plaintiff argues this is due to the fact that he has not stood trial yet on the criminal charges and, thus, the evidence poses a risk of leading to "litigation of collateral issues," which risks distracting the jury and consuming the Court's and the jury's time. *Id.* at 10-11.

Defendants contend that evidence of "other acts" is admissible if it is relevant to any material issue other than character, and that it can be provided with a limiting instruction to consider it only for the purpose for which it is offered. (Doc. 63 at 6). Defendants also argue that Plaintiff cannot put his emotional state at issue by asserting an emotional distress claim and alleging he experiences emotional

trauma and then deny Defendants the opportunity to present alternative evidence of causation. In other words, Defendants assert Plaintiff cannot put his emotional state at issue in this action and then claim that evidence suggesting an alternative source of anguish is more prejudicial than probative; to the contrary, Defendants assert it would be far more prejudicial to the Defendants to exclude this evidence than it would be to allow its admission with a limiting instruction, namely, that Plaintiff is innocent until proven guilty and no conclusions should be drawn with respect to innocence or guilt for charges which have not resulted in a conviction. *Id.* at 6-7. Defendants separately contend the evidence of the pending criminal charges is relevant as to Plaintiff's damages. *Id.* at 7.

### *No. 1: Ruling*

"Rule 404(b) says other bad acts evidence may be admitted 'for [non-propensity] purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *United States v. Cruz-Garcia*, 344 F.3d 951, 955 (9th Cir. 2003) (quoting Fed. R. Evid. 404(b)) (emphasis removed). As the "text [of Rule 404(b)] makes clear, this list is illustrative, not exhaustive." *Id.*

"The Ninth Circuit has held that evidence may be admitted pursuant to 404(b) if (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *Barnet v. Gamboa*, No. 1:05–cv–01022–BAM PC, 2013 WL 178132, at *6 (E.D. Cal. Jan. 16, 2023) (quoting *United States v. Cherer*, 513 F.3d 1150, 1157 (9th Cir. 2008)) (internal quotation and citation omitted). If evidence satisfies Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403. *Id.* "The proponent of the disputed evidence bears the burden of demonstrating its admissibility under the foregoing test." *Id.*

Other courts have found that Rule 404(b) permits introduction of "other acts" evidence in Section 1983 cases where relevant to the issue of alternative theories of causation and damages. *E.g.*, *Gaines v. Chicago Bd. of Educ.*, -- F. Supp.3d --, 2024 WL 640802, at *5 (N.D. Ill. 2024) (admitting pursuant to Rule 404(b) evidence relating to child's previous behavioral incidents and disciplinary history as relevant to issues of causation of alleged psychological harm and damages); *Stephen v.*

4

*Hanley*, No. 03-CV-6226(KAM)(LB), 2009 WL 1471180, at *9 (E.D.N.Y. May 21, 2009) (finding fact and date of § 1983 plaintiff's youthful adjudication and the amount of time he spent in custody related to the adjudication admissible pursuant to Rule 404(b) "for purposes of proving or disproving causation and damages" regarding his alleged emotional injuries); *Giles v. Rhodes*, No. 94 Civ. 6385(CSH), 2000 WL 1425046, at *14-15 (S.D.N.Y. Sept. 27, 2000) (admitting pursuant to Rule 404(b) evidence that § 1983 plaintiff was involved in subsequent injury-causing altercation shortly after incident for which his claims were based; "Defendants should be allowed to show that all or some of Giles' injuries were caused during the later incident and, perforce, not by them"). *Accord Knudsen v. Welch*, 872 F.2d 428 (9th Cir. 1989) (approving trial court's limiting instruction prior to § 1983 plaintiff's cross-examination: "the questions and answers [with regard to prior occasions of confinement] are only relevant insofar as they may bear on the issue of damages") (unpublished).

      The Court finds the reasoning of these cases persuasive and applicable here. Evidence that Plaintiff has been exposed to other traumatic events (lengthy incarceration) in close proximity to the incident at issue in this case is relevant to a material point (causation of his alleged emotional distress and damages). While the evidence of incarceration is undisputed, the Court does not have sufficient evidence before it to support a finding that Plaintiff committed any particular acts or the charged crimes resulting in the incarceration. Under the Ninth Circuit's four-part test, the analysis above weighs in favor of admitting evidence that Plaintiff was incarcerated just a few weeks after the incident at issue in this case for approximately 44 months, but the same analysis weighs against admitting evidence of the nature of the crimes charged and the underlying acts. *See Cherer*, 513 F.3d at 1157; *United States v. Montgomery*, 150 F.3d 983, 1001 (9th Cir. 1998) (proponent of Rule 404(b) evidence bears burden of demonstrating satisfaction of four-part test). Further, in order to minimize the danger of unfair prejudice, the Court will exclude evidence that Plaintiff currently is incarcerated or facing exposure to significant penalties in the event he is convicted of the crimes charged. *See Green v. Baca*, 226 F.R.D. 624, 657 (C.D. Cal. 2005) (permitting introduction of evidence concerning length of § 1983 plaintiff's incarcerations as relevant to the issue of damages for emotional distress, but excluding evidence of nature of convictions and fact of plaintiff's current incarcerated status); *Giles*, 2000 WL 1425046, at *15 (limiting scope of evidence admissible under Rule 404(b) "in order

to minimize the risk of prejudice from disclosure of plaintiff's role in the incident, while maximizing the probative value of the evidence on the causation of plaintiff's injuries"). *Cf. Settrini v. City of San Diego*, No. 3:20-cv-02273-RBM-BGS, 2023 WL 5519758, at *3-4 (S.D. Cal. Aug. 25, 2023) (noting "minimal probative value" of § 1983 plaintiff's history of contacts with law enforcement to the issue of damages for emotional distress was outweighed by danger of unfair prejudice under Rule 403) (citing cases).

Prior to Defendants' introduction of any evidence concerning the fact and length of Plaintiff's incarceration, counsel for Defendants shall alert the Court to facilitate its issuance of a limiting instruction to the jury that the evidence may be considered only as relevant to issues of causation and damages. *See Knudsen*, 872 F.2d at 478 (9th Cir. 1989).

### *No. 2: February 17, 2024 Kern County Jail Incident and Related Charges and Evidence*

On February 17, 2024, Plaintiff was involved in a physical altercation with another inmate in Kern County jail. Plaintiff seeks to exclude any reference, evidence, testimony, or argument regarding charges or evidence related to this encounter. (Doc. 60 at 12). Plaintiff asserts that any such charges or evidence are irrelevant to the question of whether the Defendants' use of force was reasonable (both as to his section 1983 and related state law claims) because a jury must judge reasonableness based on what was known to the officers at the time force was employed, and the evidence at issue would cause a substantial risk that the jury will judge the use of force with "20/20 hindsight" (quoting language similar to that used in *Glenn*, 673 F.3d 864, 873, n.8). *Id.* at 13. Additionally, Plaintiff argues that Defendants do not have a testifying expert able to rebut the testimony offered by Plaintiff's orthopedic expert, particularly regarding Plaintiff's ability to physically throw a punch. Plaintiff argues that, therefore, the evidence is not probative regarding the extent of Plaintiff's injury, in that it does not make his injury, or extent of injury, any more or less likely to be true. *Id.*

Plaintiff also argues that to introduce such evidence would suggest an improper inference based on character evidence, in that the jury may infer Plaintiff gave the officers reason to use force in this action due to alleged bad conduct in the February 17 encounter. *Id.* at 13-14. Plaintiff argues that, because the February 17 encounter took place over three years after the events at issue in this action,

none of the possible permitted uses for character evidence provided for under Federal Rule of Evidence 404(b)(2) logically apply, and that Plaintiff's subsequent conduct on February 17, 2024 cannot be relevant to issues such as motive, opportunity, intent, or plan to resist or evade Defendants Vaughan and Davenport on December 28, 2020. *Id.*

Moreover, Plaintiff argues any such charges or evidence should be excluded because the probative value of the evidence is none or, in the alternative, substantially outweighed by the danger of unfair prejudice. Plaintiff argues this is due to the fact that he has yet to stand trial and the alleged bad acts which occurred after the events at issue in this action do not bear on the reasonableness of Defendants' conduct. Plaintiff argues that, if Defendants can introduce this evidence, he will have to explain the circumstances of these acts, or try to mitigate their prejudicial impact, and this will then distract the jury, as well as consume the Court's and the jury's time. *Id.* at 14-15.

Finally, Plaintiff states that Defendants' supplemental disclosure of the February 17 incident report (on March 27, 2024) included neither photographic nor video evidence. Plaintiff further states that he was not aware of Defendants' intent to use, nor possession of, video evidence of the February 17 incident until the parties prepared their joint pretrial statement in July. Plaintiff states he has not received any photographic or video evidence of the February 17 incident, and cannot compel production of it with discovery long closed. Plaintiff argues that there is no time to introduce such evidence into this case, with trial scheduled to commence imminently, due to neither Plaintiff nor his expert having seen it, and with his counsel engaged in trial in late September in another matter.

Defendant opposes and asserts Plaintiff's second motion *in limine* is substantially similar in his arguments as his first motion *in limine*. Defendant argues that Plaintiff seeks to preclude Defendants from presenting any evidence of alternative causes of emotional distress since the subject incident. (Doc. 63 at 7). Defendants argue that they promptly disclosed the evidence upon learning of it on March 27, 2024 (approximately five weeks after the incident) and served a third supplemental Rule 26 report identifying the individuals involved, provided a copy of the report, and identified a photograph and video of the incident. Defendants state they indicated they were not in possession, custody, or control of the evidence and it was likely with Kern County, and they intend to issue a trial subpoena for it. Defendants state the discovery cut-off cannot "possibly or equitably" serve as a bar to

7

introduction of the evidence, particularly as Defendants promptly disclosed it upon discovery. *Id.* at 8. Defendants support their opposition to Plaintiff's motion with reports from Kern County documenting the jail altercation between Plaintiff and another inmate. *See* (Doc. 63, Declaration of Heather Cohen ["Cohen Decl."] Ex. 4).

Defendants assert evidence of the altercation and Plaintiff's resulting injuries is relevant given that Plaintiff claims "severe physical limitations" including "numbness and weakness in his right hand" from the use of force incident. (Doc. 63 at 6). Accordingly, Defendants argue they should be permitted to cross-examine Plaintiff and his medical expert about the jail altercation. *Id.* Separately, Defendants argue that Plaintiff cannot put his emotional state at issue and then deny Defendants the opportunity to present alternative causation evidence. Defendants argue that they are entitled to present evidence showing lack of proximate cause for Plaintiff's claimed emotional distress and use such evidence in cross-examination of Plaintiff's experts as to whether or not Plaintiff is truly limited and experiencing the injuries and issues that he and his expert claim. Defendants also present case law arguing that evidence of "other acts" is permissible if it is relevant to any material issue other than character. They claim that when "other acts" evidence is admitted, the Court may give a limiting instruction as to its consideration by the jury, namely, that Plaintiff is innocent until proven guilty and no conclusions should be drawn with respect to innocence or guilt for charges which have not resulted in a conviction. Finally, Defendants claim it would be far more prejudicial to the Defendants to exclude this evidence than it would be to allow its admission with a limiting instruction, and that it is relevant as to Plaintiff's damages. *Id.* at 11-12.

### *No. 2: Ruling*

In his complaint, Plaintiff alleges he suffers from "devasting [*sic*] continued injury to [his] right arm including nerve damage," pain, and "profound emotional harm and distress" as a result of the December 2020 use of force incident upon which his claims are based. *E.g.*, (Doc. 1, "Complaint" at ¶¶ 37(j), 38, 39, 50). In law enforcement agency reports documenting the jail altercation in February 2024, jail staff report Plaintiff suffered bruising and swelling on his right hand. *See* (Cohen Decl. Ex. 4).

8

For the same reasons set forth in its ruling on Plaintiff's Motion in Limine No. 1 (*supra*), the Court finds that evidence of the violent altercation between Plaintiff and another inmate some seven months ago is relevant to a material point (causation of Plaintiff's alleged emotional distress and damages). Similarly, in the event Plaintiff introduces evidence, either through his own testimony or expert testimony, that he currently suffers from injuries or symptoms that plausibly could be attributed to the jail altercation (such as numbness in the hand), evidence of the jail altercation also is relevant to Plaintiff's claim for physical damages as an alternative causal event. *See Shorter v. Baca*, No. 2:12-07337-DDC, 2023 WL 6194295, at *3 (C.D. Cal. Feb. 27, 2023) ("the Court will permit Defendants to introduce evidence relating to Plaintiff's medical treatment during those incarcerations for the purpose of disproving or mitigating Plaintiff's physical and/or emotional damages") (citing *inter alia Halvorsen v. Baird*, 146 F.3d 680, 687 (9th Cir. 1998)). Accordingly, so long as it is consistent with Rule 403, this "other acts" evidence is admissible under Rule 404(b) for a non-propensity purpose subject to a limiting instruction that the fact of the jail altercation and resulting injury is admissible as relevant to causation and damages only.

Because the Court already has found that evidence of Plaintiff's approximate 44-month period of incarceration is relevant and not inadmissible under Rule 403, the Court finds that admission of the fact that Plaintiff was involved in a jail altercation (*i.e.*, while in custody) does not risk introducing substantial unfair prejudice. However, details regarding the incident – including who was the aggressor, the extent of the other inmate's injuries, and the fact that Plaintiff may be facing discipline and criminal charges as a result of the altercation – have little to no probative value to the issue of damages and causation and likely would present a substantial risk of unfair prejudice were such details presented to the jury. Accordingly, Defendants may not introduce evidence of those details (*see* Fed. R. Evid. 403) unless for a proper rebuttal reason. *E.g.*, *Jones v. Mora*, No. 20-cv-04093-TSH, 2022 WL 17365253, at *5 (N.D. Cal. Dec. 1, 2022) ("the Court cautions Plaintiff that if Plaintiff claims he is a 'model inmate,' Defendants may introduce rebuttal evidence that involves Plaintiff's conduct and disciplinary record").

Nor does the Court find that the minimal probative value of photographs of Plaintiff's injuries stemming from and video footage of the jail altercation outweighs the substantial danger of unfair

prejudice that introduction of such evidence would cause. Accordingly, the photograph(s) and video of the jail altercation cited in the parties' motion papers, too, is inadmissible under Rule 403.

### *No. 3: Juvenile Arrests and Convictions, Adult Arrests Not Resulting in Convictions, and Social Media Image Allegedly Showing Plaintiff Brandishing Weapons*[1]

#### a. Juvenile Arrests and Convictions

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to juvenile arrests and convictions. (Doc. 60 at 17-18). Defendants do not oppose the third motion *in limine* as to juvenile arrests and convictions, unless Plaintiff opens the door to them. (Doc. 63 at 12).

#### b. Adult Arrests Not Resulting in Convictions

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to adult arrests not resulting in convictions. Plaintiff states he was arrested twenty-seven times between May 2007 and December 28, 2020. Of these, Plaintiff states thirteen resulted in misdemeanor convictions and three in felony convictions, with the remaining (presumably eleven) arrests consisting of either parole violations or dismissals. Plaintiff argues that Defendant Vaughn described his knowledge of Plaintiff's criminal history in vague terms that were non-specific as to the charges and convictions on Plaintiff's criminal record and, as such, Defendants should not be allowed to testify to the specific charges and arrests; rather, they should be limited in testimony at trial to the testimony provided in Defendant Vaughn's deposition. (Doc. 60 at 18).

Plaintiff specifically mentions a charge from 2016 following his arrest for assault with a deadly weapon, which was changed to attempted murder, and then dismissed. Plaintiff argues that Defendant Vaughn likely did not learn of this arrest until after the incident at issue in this action, due to inconsistent testimony during his deposition, namely that Defendant Vaughn first testified in his deposition he had heard of the arrest as it was "public knowledge," then that he learned of it from viewing Plaintiff's "criminal history," but could not recall when he saw such information, only that it could not be prior to August 2020 as he did not know who Plaintiff was before then. Plaintiff argues that the foregoing, in addition to the fact Defendant Vaughn did not mention this arrest in his police

---

[1] Plaintiff does not seek to exclude evidence of adult felony convictions and represents that the parties have agreed to a stipulation to the admissibility of all adult felony convictions. (Doc. 60 at 16).

report on the incident at issue in this action, strongly suggest that Defendant Vaughn learned of this arrest from other sources, mentioning specifically "old public news posts existing on the internet from 2016," which he found after the December 28, 2020 incident. *Id.* at 19. Plaintiff attaches portions of Defendant Vaughn's deposition transcript. *See id.*; *see also* (Doc. 60, Declaration of Brian Bush ["Bush Decl."], Ex. B at 56-83).

### c. Social Media Image

Plaintiff seeks to exclude any reference, evidence, testimony, or argument relating to a social media post in which Plaintiff is allegedly holding firearms. Plaintiff states Defendant Vaughn mentioned such a post in his deposition testimony, which caused him to feel that Plaintiff was a dangerous armed felon when Defendant Vaughn encountered Plaintiff on December 28, 2020. Plaintiff states that, when pressed, Defendant Vaughn could not recall when or where he saw the photo, the circumstances under which he would have seen a social media photo of Plaintiff, and he admitted he was uncertain if he saw the photo before or after the December 28, 2020 incident. *Id.* at 19. Plaintiff attaches portions of Defendant Vaughn's deposition transcript. *See id.*; *see also* Bush Decl., Ex. B at 56-83.

### d. Defendants' Opposition

Defendants rely on law enforcement reports of the December 28, 2020 arrest, written by officers Davenport (Doc. 63 at 72-77) and Vaughn (Doc. 63 at 78-83), in opposition to Plaintiff's third motion *in limine*. (Doc. 63 at 12-15). Defendants also rely on excerpts from the depositions of Davenport (Doc. 63, Cohen Decl., Exhibit 9 at 98-108) and Vaughn (Doc. 63, Cohen Decl., Exhibit 8 at 87-96) regarding testimony the officers gave on their knowledge of prior encounters with Plaintiff, Plaintiff's prior arrests, lack of a valid driver's license, knowledge of his membership in a gang, status on bail from prior alleged Penal Code violations, and social media posts posing with firearms. Defendants also provide summaries of Plaintiff's designated police procedures expert Jeffrey Noble's deposition testimony (Doc. 63, Cohen Decl., Exhibit 10 at 110-117), namely as to his statements that Plaintiff possibly being armed and having prior criminal history and gang membership was very important, that Vaughn's knowledge of this criminal history was important to his analysis, that

Vaughn's knowledge of Plaintiff's history included crimes of violence, issues with firearms, and resisting arrest, and that Vaughn's knowledge of such was important to his analysis. (Doc. 63 at 16).

Defendants argue that the officers should be permitted to testify that they were aware Plaintiff was on active bail for alleged violations of Penal Code section 148(a)(1), obstructing or resisting arrest, and Penal Code section 836.6(b), escape from lawful arrest. Defendants contend Vaughn should be permitted to testify that Plaintiff had actively attempted to evade arrest, and resisted arrest, on August 17, 2020. Defendants also argue that the officers should be permitted to testify that Plaintiff was a documented member of the East Side Crips criminal gang, had multiple arrests for firearms violations, resisting arrest, and burglaries, and had been arrested for murder prior to these events. Defendants contend that Vaughn documenting his knowledge of Plaintiff's social media post in his report demonstrates he had knowledge of it prior to the subject incident. *Id.* at 17. Defendants also state that Plaintiff's arrests and contacts with the police, both prior to and subsequent to the subject incident, are relevant as to his damages. *Id.* at 18.

### *No. 3: Ruling*

Plaintiff's claims that law enforcement officers used excessive force in the course of a "seizure" of a person are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).[2] "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. "Conducting this fact-based inquiry encompasses a consideration of the facts known to the police officers at the time." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (citing *Graham*, 490 U.S. at 396). *See, e.g., Blankenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007) (weighing officer's knowledge prior to encounter with plaintiff of plaintiff's gang association and criminal history). Thus, in an excessive force case, consistent with Rule 403, the Court of Appeals permits juries to hear about law enforcement's prior contacts with and

---

[2] "It is clear that under *Graham*, excessive force claims arising before or during arrest are to be analyzed <u>exclusively</u> under the fourth amendment's reasonableness standard rather than the substantive due process standard...." *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) (quoting *Reed v. Hoy*, 909 F.2d 324, 329 (9th Cir.1989) (emphasis added), overruled on other grounds as stated in *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 956 n.14 (9th Cir. 2010)).

12

criminal history of the plaintiff where the Court admonishes the jury that the prior bad conduct is to be considered only in the context of determining whether the officers' actions were reasonable (not for an impermissible propensity inference). *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). Courts also permit introduction of evidence concerning a plaintiff's known gang affiliation when it is "relevant to a material issue in the case" (such as an officer's state of mind). *United States v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000); *Blankenhorn*, 485 F.3d at 478. *See, e.g.*, *Stevenson v. Holland*, 504 F. Supp.3d 1107, 1138 (E.D. Cal. 2020) ("any admission of gang affiliation evidence must be strictly limited to Defendants' testimony as to their states of mind").

Based on Defendant Vaughn's deposition testimony, it appears he can testify with reasonable confidence that he was aware, prior to the use of force incident, that Plaintiff (1) had been involved in an incident in 2020 involving his hiding in a house or trunk of a car, (2) had been arrested several months prior in connection with a 2016 attempted shooting-related murder, (3) was a documented member of a criminal street gang, and (4) had fled from officers earlier in the day of the use of force incident. (Bush Decl. Ex. B, Tr. 26-28, 33-34, 49-50). These are the same four factors Vaughn memorialized in his report that he was considering when he approached Plaintiff during the use of force incident. *See* (Cohen Decl. Ex. 6 at 33-34).

As to Defendant Davenport, it appears he can testify with reasonable confidence that he was aware from a records check conducted prior to the use of force incident that Plaintiff previously had been charged with weapons offenses and resisting/obstructing police officers. (Cohen Decl. Ex. 9 at 37-39).

Because these factors are relevant to an analysis of the objective reasonableness of Defendants' use of force, Defendants will be permitted to admit such evidence with appropriate safeguards to ensure the probative value is not substantially outweighed by the risk of unfair prejudice. First, prior to admission of such evidence, counsel shall alert the Court to issue a limiting instruction that the jury consider the evidence only in determining the reasonableness of Defendants' actions. Second, as to Plaintiff's arrest without conviction on a shooting-related attempted murder charge, Defendants may only introduce that they were aware Plaintiff previously had been arrested for involvement in a shooting-related incident (not an attempted murder charge). *See* Fed. R. Evid. 403.

13

It does not appear Defendant Vaughn can testify with reasonable confidence that he knew at the time of the use of force incident that Plaintiff was depicted in social media posts possessing a firearm. (Tr. 31, 51). To the contrary, when asked at deposition to pinpoint the time he became aware of such social media posts, Vaughn testified, "I believe it was sometime before [the incident]. But I … it could have been after. I don't remember." (Tr. 30-31, 51). Defendants argue that Vaughn's reference to the social media posts in his reports documenting the use of force incident "unequivocally demonstrates Defendant Vaughn did know this information at the time of the incident" (Doc. 63 at 12, 14). The Court disagrees. Vaughn's report of the incident is a "supplemental" report dated the day following the incident (December 29, 2020) and does not establish unequivocally or otherwise that Vaughn necessarily knew about and took into account the social media posts during the use of force incident. *See* (Cohen Decl. Ex. 6 at 31-32). Moreover, Vaughn does not identify the social media posts in his supplemental report among the other factors and circumstances he reportedly was aware of and considered during the use of force incident (*see supra*). Accordingly, given Vaughn's inability to confirm during deposition when, in relation to the use of force incident, he became aware of the social media posts, the Court finds any testimony by Vaughn as to the social media posts for any possibly permissible purpose would be inherently speculative, and, thus, inadmissible.

**D. Defendants' Contested Motion** *in Limine*

*No. 1: Internal Affairs Investigation and Conclusion*

Defendants seek to exclude any and all evidence, references to evidence, testimony or argument relating to an internal affairs investigation conducted after the incident and the conclusions that it reached. (Doc. 59 at 5). Defendants state that Bakersfield Police Department's Department of Internal Affairs conducted an investigation into the December 28, 2020 incident and, on April 19, 2022, sent a letter to Plaintiff regarding the findings of this investigation. Defendants state the letter advised that the investigation found allegations of (1) excessive force to be "unfounded," (2) discourteous treatment of others to be "unfounded," (3) use of force, supervisor responsibilities, to be "sustained," and (4) unsatisfactory work performance to be "sustained." *Id.* at 6.

Defendants argue that the internal affairs investigation and conclusions do not tend to prove or disprove the elements of Plaintiff's claims nor his damages. Defendants also argue that the

14

investigation and conclusions are remedial measures that would have made an earlier injury or harm less likely to occur and, thus, fall under Federal Rule of Evidence 407 and are inadmissible, citing *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986).  Lastly, Defendants argue that the probative value of the investigation and conclusions are outweighed by their prejudicial effect, again citing *Maddox*, as they would confuse the jury and would usurp the jury's role because they would imply that the Defendants engaged in wrongdoing, and so argue exclusion under Federal Rule of Evidence 403.  *Id.* at 7-8.

Plaintiff opposes this motion in part, namely as to findings (1) and (4) above.  Plaintiff argues that the finding that this incident does not amount to excessive force, particularly when viewed in light of video evidence, acts as an indictment on the credibility of Defendants' witnesses, and should therefore be admissible.  Plaintiff also argues that the internal affairs investigation and findings do not qualify as subsequent remedial measures.  (Doc. 64 at 1-2).

Plaintiff provides that BPD Assistant Chief Stratton, testified in his deposition that he personally made the decisions as to findings (1) through (4).  In explaining finding (4), Plaintiff states that Assistant Chief Stratton listed a number of deficiencies in tactics that he found unsatisfactory.  Plaintiff quotes sections of the deposition concerning Assistant Chief Stratton's testimony as to verbal communications made by officers to Plaintiff, transition between firearm and taser, control of the K-9, and officers grabbing of Plaintiff instead of arresting him on his knees.  *Id.* at 3-4 (citing Doc. 64, Bush Decl., Ex. A at 10-20).  Plaintiff contends the investigation and findings are relevant in allowing the jury to hear that the Bakersfield Police Department found these tactics unsatisfactory.  *Id.* at 5.

Plaintiff argues the investigation and findings evidence bias in the testimony of employees of the City of Bakersfield, and is relevant as to their credibility (*id.* at 4-5), and attempts to distinguish *Maddox* and argues that the investigation and findings do not qualify as remedial measures, quoting a Central District case which distinguished *Maddox* by holding a report by the Citizen's Commission on Jail Violence in Los Angeles was not written in response to the incident in that case and was not a remedial measure, unlike the disciplinary proceeding in *Maddox*. *Id.* at 6 (citing *Willis v. Vasquez,* No. LA CV10-07390 JAK (DTBx), 2014 WL 12596313, at *11 (C.D. Cal. Apr. 1, 2014), aff'd, 648 Fed. Appx. 720 (9th Cir. 2016)).  Finally, Plaintiff contends that the jury instructions establish that an

15

officer's conduct and decisions prior to using force are only one factor in determining an officer's liability for excessive force under a negligence theory, citing CACI 440, and therefore the jury will not be confused by this evidence. *Id.* at 7.

### *No. 1 – Finding #1: Ruling*

The finding of the Bakersfield Police Department (BPD) that the officers' conduct in contacting and apprehending Plaintiff did not constitute excessive force is based on its investigation revealing evidence that the conduct did not violate Policy 300.2. (Doc. 59 Declaration of Michael Marderosian ["Marderosian Decl."] Ex. 1 at 1). The official responsible for the finding is BPD Assistant Chief Stratton. (Doc. 64 Ex. A at Tr. 43).

Plaintiff argues that BPD's "flagrantly unreasonable" finding of no excessive force is relevant to the issue of officer-witnesses' credibility: to wit, "it is highly illustrative of the bias coloring the testimony of the City employee witnesses in this case." (Doc. 64 at 5). For support, Plaintiff cites a single case (*Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995)). However, *Soto* is not persuasive as the court's discussion of the relevance of agency findings in that case was in the context of a discovery dispute: the case does not stand broadly for the proposition Plaintiff asserts, namely, that evidence purportedly relevant to credibility of non-party witnesses is admissible at trial.

In all events, the Court finds that any minimal probative value in admitting BPD's finding concerning no excessive force relevant to the issue of witness credibility would be substantially outweighed by the risk of unfair prejudice under Rule 403 given the bedrock principle that witnesses may not offer opinions as to a legal conclusion or ultimate issue of law. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). *See, e.g.*, *Nash-Perry v. City of Bakersfield*, No. 1:18-cv-1512 JLT BAK (SAB), 2022 WL 3357516, at *11-12 (E.D. Cal. Aug. 15, 2022) (precluding use of force expert from testifying that force used was "improper and unnecessary"); *Morgan v. City of Los Angeles*, No. 2:17-cv-06693-VAP-JEMx, 2020 WL 6048831, at *3-4 (C.D. Cal. June 23, 2020) (police practices expert could not offer opinion as to whether officer's actions constituted "excessive force" or were "objectively reasonable").

### *No. 1 – Finding #4: Ruling*

BPD's finding that the officers' conduct in contacting and apprehending Plaintiff constituted

"unsatisfactory work performance" is based on its investigation revealing evidence that the conduct violated Policy 1003.3.5(c). (Doc. 59 "Marderosian Decl." Ex. 1 at 1). The official responsible for the finding is BPD Assistant Chief Brent Stratton. (Doc. 64 Ex. A at Tr. 31-32). The finding was based on Assistant Chief Stratton's opinions that Policy 1003.3.5(c) was violated in the following regard: unnecessary communications among responding officers and Plaintiff; insufficient control of K9; an officer's simultaneous possession of a firearm and taser; multiple responding officers giving simultaneous directions. *Id.* Tr. 32-35.

In excessive force cases, it is universally accepted that expert witnesses may testify regarding general police policies and professional standards of practice when at issue in the case because consistency with or deviations from general police policies and professional standards of practice are relevant factors in determining the ultimate issues in such a case. *E.g., Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005); *Stevenson v. Holland*, 504 F. Supp.3d 1107, 1133 (E.D. Cal. 2020); *Cotton v. City of Eureka, Cal.*, No. C 08–04386 SBA, 2010 WL 5154945, at *19 (N.D. Cal. Dec. 14, 2010). Such expert witnesses also may offer opinions as to how a hypothetical reasonable officer should respond under defined use of force circumstances and whether any particular responding officer's conduct was consistent with applicable policies and procedures. *See Stevenson*, 504 F. Supp.3d at 1119; *Zeen v. Cnty. of Sonoma*, No. 17-cv-02056-LB, 2018 WL 3769867, *3 (N.D. Cal. Aug. 9, 2018); *Cotton,* 2010 WL 5154945, at *19. But because an opinion concerning the appropriateness of an officer's conduct as compared to applicable police policies and procedures requires specialized knowledge, it may be admitted only through an expert witness. *See* Fed. R. Evid. 701, 702.

Here, Assistant Chief Stratton's opinions and the facts and circumstances upon which they are based properly may be considered by the trier of fact in an excessive force case. *See* Ninth Circuit Manual of Civil Jury Instructions No. 9.25. In the event Plaintiff properly has noticed an expert witness pursuant to Fed. R. Civ. P. 26(a) to offer opinions akin to Assistant Chief Stratton's opinions, those opinions are admissible.

While evidence of the appropriateness of a Defendant's conduct pursuant to agency policy may be admissible, the fact that an agency investigation determined that the Defendants' conduct *in fact*

violated agency policy is inadmissible. *See Speer v. Cnty. of San Bernardino*, No. EDCV 20-44 JGB (SPx), 2021 WL 5969521, at *2 (C.D. Cal. Aug. 9, 2021) ("While these policies and procedures may be relevant, the agencies' investigation and conclusion as to how Deputy Millan's actions comported with those policies is not."). Even if marginally relevant, the probative value of the findings would be substantially outweighed by the prejudice given the likelihood that introduction of the findings would invade the province of the jury in its fact-finding role and "substitute the agency's findings for [the jury's] own." *Id.* at *3 (quoting *Hutchinson v. City of Thompson Falls*, No. CV 19-195-M-DLC, 2021 WL 321886, at *9 (D. Mont. Feb. 1, 2021).

In sum, while the substance of the opinions underlying the investigative findings may properly be admitted through a noticed expert witness, the fact of the investigative findings is inadmissible.

**Conclusion and Order**

Based on the foregoing, it is therefore **ORDERED** that:

(1) Plaintiff's Motion *in Limine* No. 1 (Doc. 60) is **GRANTED IN PART**;

(2) Plaintiff's Motion *in Limine* No. 2 (Doc. 60) is **GRANTED IN PART**;

(3) Plaintiff's Motion *in Limine* No. 3 (Doc. 60) is **GRANTED IN PART**; and

(4) Defendants' Motion *in Limine* No. 1 (Doc. 59) is **GRANTED**.

IT IS SO ORDERED.

Dated:   **September 26, 2024**                         _____
                                                        UNITED STATES MAGISTRATE JUDGE